# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

FREDDIE OLIVER,

    Plaintiff,

v.                                                          Case No. 04-C-735

MATTHEW FRANK, GARY R. MCCAUGHTRY,
MARC CLEMENTS, CAPTAIN MICHAEL THOMAS,
JEFF FRIDAY, SGT. DOUGLAS KNAPP,
MICHAEL MAHN, and BRIAN ZIMMERMAN,

    Defendants,

## ORDER

    Plaintiff Freddie Oliver, who is incarcerated at Waupun Correctional Institution ("WCI") filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. On October 4, 2004, he was granted leave to proceed in forma pauperis on Eighth Amendment failure to protect, substantive due process, and denial of access to the courts claims, as well as two state law claims. Plaintiff alleges that several WCI officials failed to protect him from an attack by another prisoner and then conspired to deprive plaintiff of the names of the correctional officers on duty at the time of the fight. Defendants have filed a motion for summary judgment for failure to exhaust administrative remedies and a motion to dismiss the third amended complaint. These motions are ready for resolution and will be addressed herein.

### I. FACTS

**A.    Defendants' Proposed Findings of Fact**

    Plaintiff Freddie Oliver was incarcerated at WCI at all times relevant to this action. (Compl. at 1; Answer ¶ 1.) Defendant Gary R. McCaughtry was the WCI warden at all times

relevant. (Compl. at 1; Answer ¶ 2.) Defendant Marc Clements was the security director. (Compl. at 2.; Answer ¶ 3.) Defendant Michael Thomas was a lieutenant at WCI; currently he is employed as a captain there. (Compl at 2; Answer ¶ 4.) Defendant Douglas Knapp was employed as a sergeant at WCI. (Compl. at 2; Answer ¶ 5.) Defendants Jeff Friday, Brian Zimmerman, and Michael Mahn were employed as correctional officers at WCI at all times relevant. (Compl. at 2; Answer ¶¶ 6-8.)

Plaintiff has been incarcerated at WCI since February 20, 2003. (Fuller Aff. ¶ 3.)[1] He filed Offender Complaint WCI-2004-13088, relating to the March 11, 2004, incident upon which this case is based, on April 22, 2004. (Fuller Aff. ¶ 4, Ex. 1.) On June 16, 2004, institution complaint examiner Stanley Tonn rejected plaintiff's offender complaint as indicated by the ICE Rejection Complaint Number WCI-2004-13088. (Fuller Aff. ¶ 5, Ex. 2.) There is no record at WCI that plaintiff ever appealed this rejection to the WCI warden. (Fuller Aff. ¶ 6.)

## B. Plaintiff's Proposed Findings of Fact

On March 11, 2004, plaintiff was attacked and stabbed by another prisoner at WCI. (Oliver Aff. ¶ 2.) Plaintiff lodged several complaint letters to high-ranking correctional officers alleging that he was being harassed by correctional officers and that those who work in his cell block had wrongfully terminated his telephone privileges. (Oliver Aff. ¶ 4.) After being attacked, plaintiff intended to seek legal action against the correctional staff who were on duty at the time of the incident, however, he did not know their names. (Oliver Aff. ¶ 5.)

---

[1] Pamela S. Fuller is employed as a registrar at WCI. (Fuller Aff. ¶ 1.) She has been employed by the State of Wisconsin since November 9, 1972, and she has held her present position since July 15, 1990. (Id.) As part of Ms. Fuller's duties as registrar, she is a custodian of WCI's egularly conducted business records. (Fuller Aff. ¶ 4.)

On approximately March 16, 2004, plaintiff wrote a letter to defendant Marc Clements requesting the names of the correctional officers who were assigned to the northwest cell hall and who were present at the time of the attack. (Oliver Aff. ¶ 12.) On or about March 20, 2004, defendant Clements informed plaintiff that he could not be provided with that information because he was an inmate and that in order to obtain such information, plaintiff should have a family member obtain it. (Oliver Aff. ¶ 13.) On approximately April 27, 2004, plaintiff's wife, Rhonda Oliver, contacted defendant Clements via telephone and requested that he provide her with the names of the correctional officers who were present when her husband was attacked in the northwest cell hall on March 11, 2004. (Mrs. Oliver Aff. ¶ 2.) Defendant Clements informed Mrs. Oliver that such information would not be provided over the phone and that she should put her request in writing and send it to the warden. (Mrs. Oliver Aff. ¶ 3.)

On May 1, 2004, Mrs. Oliver wrote a letter to the warden at WCI, defendant Gary McCaughtry, requesting the names of the officers. (Mrs. Oliver Aff. ¶ 4.) On May 11, 2004, defendant Clements responded to Mrs. Oliver's request for the names of those correctional officers, denying that request on grounds that such information could not be accessed by inmates and that if she were provided with such information, her husband would then have access to it. (Mrs. Oliver Aff. ¶ 5.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

3

as a matter of law." Fed. R. Civ. P. 56(c).  The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id.  For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit."  Id.

The party moving for summary judgment bears the initial burden of demonstrating that it is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may satisfy its initial burden simply by pointing out that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial.  Id. at 322-23.  Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, it is "not required to draw every conceivable inference from the record – only those inferences that are reasonable."  Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

4

## III. DISCUSSION

Defendants contend that they are entitled to summary judgment because plaintiff failed to exhaust administrative remedies. The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. Dixon v. Page, 291 F.3d 485, 488 (7th Cir. 2002) (citing Perez v. Wis. Dep't of Corrs., 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, No. 05-416, 2006 WL 1698937, at *4, *7 (U.S. June 22, 2006); see also Pozo v. McCaughtry, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.").

The Inmate Complaint Review System ("ICRS") within the Wisconsin prisons is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). The Wisconsin Administrative Code specifically provides that before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the Department of

5

Corrections has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1).

In order to use the ICRS, an inmate must file a complaint with the inmate complaint examiner within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) & 310.09(6). Complaints submitted later than fourteen days after the event may be accepted for good cause. Wis. Admin. Code § DOC 310.09(6). After reviewing and acknowledging each complaint in writing, the inmate complaint examiner either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within ten days following receipt of the recommendation. Wis. Admin. Code § DOC 310.12. Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the corrections complaint examiner. Wis. Admin. Code § DOC 310.13(1). The corrections complaint examiner reviews the appeal and makes a recommendation to the Secretary of the Department of Corrections. Wis. Admin. Code § DOC 310.13(6). The Secretary may accept, adopt, or reject the corrections complaint examiner's recommendation, or return the appeal to the correctional complaint examiner for further investigation. Wis. Admin. Code § DOC 310.14(2).

It is undisputed that on April 22, 2004, plaintiff filed Offender Complaint WCI-2004-13088 concerning the incident that took place on March 11, 2004. Although the inmate complaint examiner has discretion to accept offender complaints filed later than fourteen

days after the event "for good cause," in this case the inmate complaint examiner rejected plaintiff's offender complaint because it was filed "[b]eyond 14 calendar day limit." (Fuller Aff. ¶ 5, Ex. 2.) Plaintiff did not file an appeal of his rejected offender complaint.

Plaintiff does not dispute that his offender complaint was rejected as untimely or that he did not file an appeal. Rather, he contends that pursuant to the doctrine of equitable estoppel, defendants should be estopped from asserting the affirmative defense of exhaustion of administrative remedies because of their own actions. Plaintiff asserts that I should apply the principles set forth in Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004), to his case. In that case, the court stated that a three-part inquiry applies when a prisoner plaintiff seeks to challenge defendants' contention that the prisoner has failed to exhaust administrative remedies as required by the PLRA. Id. at 686. Depending on a plaintiff's explanation for allegedly failing to exhaust, the court asks, 1) whether administrative remedies were in fact available to the plaintiff; 2) whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to preserve it; and/or 3) whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. Id. The prisoner plaintiff in Hemphill stated that he did not exhaust because of threats from a defendant:

> Hemphill argues that Surber told Hemphill that "[he]'d better drop it," warned that if Hemphill "pursued[d] this any further," Surber would bring criminal charges against him, and promised that if Hemphill sought medical attention, Surber would "know about it and . . . make your life a living hell throughout this penal system." In the face of such alleged verbal and physical threats, and "with fear of being assaulted [further] by the defendants," Hemphill asserts that he "agree[d] to their threats so that he would not be torture[d] any more."

7

Id. at 689. Under these circumstances, the Court of Appeals for the Second Circuit remanded the case so that the district court could consider whether the defendants' non-exhaustion defense was barred by equitable estoppel. Id.

The Court of Appeals for the Seventh Circuit has not concluded that the exhaustion defense is subject to equitable estoppel. See Lewis v. Washington, 300 F.3d 829, 834 (7th Cir. 2002). In Lewis, the court determined that it did not need to decide the issue because the plaintiff in that case could not satisfy the requirements for equitable estoppel. Id. To establish equitable estoppel, the party claiming estoppel must show: (1) a misrepresentation by the opposing party; (2) reasonable reliance on that misrepresentation; and (3) detriment. Id. (citing LaBonte v. United States, 233 F.3d 1049, 1053 (7th Cir. 2000)). A party asserting estoppel against the government must also show affirmative misconduct. Lewis, 300 F.3d at 834. Affirmative misconduct "requires an affirmative act to misrepresent or mislead . . . [and] a government's failure to discharge an 'affirmative obligation' is not the same as engaging in 'affirmative misconduct.'" Id. (quoting Gibson v. West, 201 F.3d 990, 994 (7th Cir. 2000) and Edgewater Hosp., Inc. v. Bowen, 857 F.2d 1123, 1238 n.8 (7th Cir. 1988), as amended, 866 F.2d 228 (7th Cir. 1989)).

The plaintiff in Lewis filed an administrative grievance alleging that two security officers failed to protect him from his cellmate. 300 F.3d at 833. The grievance was denied in December 1997, and the plaintiff had 30 days to appeal the denial. Id. However, he did not appeal until May 1998, because, according to the plaintiff, he was still waiting for responses to his outstanding grievances and requests. Id. at 833-34. The court held that the plaintiff could not prevail on his equitable estoppel theory because his allegations concerning the prison officials' actions did not amount to affirmative misconduct:

8

> [T]he prison officials made no promises to Lewis that he could have reasonably interpreted as an assurance that he did not have to appeal his "Staff Conduct" grievance within the required 30 days. Lewis, however, argues that he waited to appeal because an appeal would have been unnecessary if his grievance against Carlos had been granted. Nevertheless, the time for appeal was clearly marked on the grievance forms, and it made no exception for the outcome of other pending grievances. Because the prison officials did nothing to affirmatively misguide Lewis into thinking that his other grievances and requests altered the time for appeal, we will not estop the government from raising the exhaustion defense.

Id. at 835.

In this case, the incident occurred on March 11, 2004. On March 16, plaintiff wrote a letter to defendant Clements requesting the names of correctional officers who were present at the Officers Station during the incident. Defendant Clements denied plaintiff's request on March 20 and suggested that a family member call the prison to obtain the names. On April 22, plaintiff filed Offender Complaint WCI-2004-13088. Mrs. Oliver contacted defendant Clements on April 27, who told her to put her request in writing and send it to the warden. On May 1, Mrs. Oliver sent a letter to the warden requesting the names and on May 11, she received a letter from defendant Clements stating that the information could not be released.

Plaintiff does not allege that he was told to wait to file his offender complaint until he obtained more names. In fact, he filed Offender Complaint WCI-2004-13088 on April 22, 2004, before Mrs. Oliver contacted defendant Clements on April 27. Also, the administrative rules do not require names on offender complaints. With respect to the level of detail in an offender complaint, the DOC administrative rules require that offender complaints filed by inmates "[c]ontain only one issue per complaint, and shall clearly identify the issue." Wis. Admin. Code § DOC 310.09(1)(e). There is no indication in the record that any defendant

9

engaged in affirmative misconduct. Since plaintiff cannot satisfy the requirements for equitable estoppel, I will not estop defendants from raising the exhaustion defense.

Plaintiff also contends that defendants' actions rendered administrative remedies unavailable to him. He asserts that defendants misled him into believing that they were going to provide the names of the officers involved in the incident and that he was waiting for those names before filing his offender complaint.

Inmates are only required to exhaust those administrative remedies that are "available."

> If prison employees refuse to provide inmates with those forms when requested, it is difficult to understand how the inmate has any available remedies. Just as prison employees cannot exploit the exhaustion requirement by not responding to grievances, see Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002), they should not be rewarded for preventing an inmate access to an administrative remedy, see Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (holding that district court erred in failing to consider prisoner's claim that he was unable to submit a grievance, and therefore lacked available administrative remedies, because prison employees refused to provide him with the necessary forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) ("[A] remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a)." (alteration in original).

Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004).

Plaintiff does not allege that he was prevented from filing his grievance. Rather, he chose to wait. Plaintiff also does not allege that he was prevented access to grievance forms or that correctional staff failed to respond to his grievance. Thus, I conclude that administrative remedies were not "unavailable" to plaintiff.

Finally, it is undisputed that plaintiff failed to file an appeal of his offender complaint rejection. "An inmate may appeal a rejected complaint within 10 calendar days only to the appropriate reviewing authority who shall only review the basis for the rejection of the

complaint." Wis. Admin. Code. § DOC 310.11(6). Plaintiff's failure to file an appeal of that rejection represents another way in which he failed to exhaust.

The undisputed facts reveal that plaintiff failed to exhaust administrative remedies with respect to the March 11, 2004, incident. Therefore, defendants' motion for summary judgment will be granted. Accordingly, I need not consider defendants' motion to dismiss and will deny it as moot.

## CONCLUSION

**For the foregoing reasons,**

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (Docket #38) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss (Docket #38) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing the plaintiff's claims and this action.

Dated at Milwaukee, Wisconsin, this 30 day of June, 2006.

/s_____
LYNN ADELMAN
District Judge